UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

SHIRELL N.,                                    Case No. 22-CV-3081 (PJS/DLM)

        Plaintiff,

v.                                             ORDER

MARTIN J. O'MALLEY, Commissioner
of Social Security Administration,

        Defendant.

---

James H. Greeman, GREEMAN TOOMEY, and Kira Treyvus, KONOSKI & PARTNERS PC, for plaintiff Shirell N.

Ana H. Voss, UNITED STATES ATTORNEY'S OFFICE; James Potter and James D. Sides, SOCIAL SECURITY ADMINISTRATION, for defendant Martin J. O'Malley.[1]

In this lawsuit, plaintiff Shirell N. challenges the Social Security Administration's denial of her application for disability benefits. Now before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, defendant Martin J. O'Malley's ("the Commissioner's") motion is granted, and Shirell's motion is denied.

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. *Press Release*, Social Security Administration, *available at* https://www.ssa.gov/news/press/releases/2023/#12-2023-2 [*archived at* https://perma.cc/2FF2-GV8T]. As the successor to former defendant Kilolo Kijakazi, O'Malley is "automatically substituted as a party." Fed. R. Civ. P. 25(d).

1

I.  BACKGROUND

Shirell filed an application for disability benefits in December 2020.  Admin. Rec. [ECF No. 13] at 217–23.  Her application alleged that she became disabled on November 30, 2019, as a result of severe mental illness, a back injury, severe anxiety, severe depression, post-traumatic stress disorder, and two back fractures.  *Id.* at 217, 238.  This application is Shirell's second application for disability benefits.  *Id.* at 12.  The Commissioner denied her previous application in April 2020, *id.*, but the unsuccessful application itself is not included in the record before the Court.[2]

An individual is deemed to be disabled and entitled to receive Social Secuirty disability benefits if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual is deemed to be disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 1382c(a)(3)(B).  "[A] physical or

---

[2]The Commissioner may reopen an application within 12 months of the date of the notice of the initial determination.  20 C.F.R. § 416.1488(a).  The Administrative Law Judge ("ALJ") noted that Shirell made an "implied request" to reopen her previous application, but denied the request because the ALJ found no basis for reopening the prior determination.  Admin. Rec. at 12.

mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that he is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i). If he is not, the process moves to step two. At step two, the claimant must establish that he has a severe medically determinable impairment or combination of impairments. *Id.* § 416.920(a)(4)(ii). If he does, the Commissioner must, at step three, find that the claimant is disabled if his impairment meets or is medically equal to one of the listings in 20 C.F.R. Part 404, Subpart P, App'x 1. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not meet or is not medically equal to one of the listings, the process moves to step four.

At step four, the claimant bears the burden of establishing his residual functional capacity ("RFC") and proving that, in light of his RFC, he cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves that he is unable to perform any past relevant work, the process moves to step five. At step five, the Commissioner has the burden to establish that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can

perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

Shirell's application for benefits was denied and then denied again on reconsideration. Admin. Rec. at 131, 139. In November 2021, at Shirell's request, an ALJ held a hearing on the application. Shirell testified at this hearing and was represented by an attorney. *Id.* at 32–92.

Following the hearing, the ALJ determined that Shirell had multiple severe impairments, including degenerative changes in the thoracic and lumbar spine, pancreatic insufficiencies with diarrhea due to malabsorption, bilateral carpal tunnel syndrome, right foot surgeries in 2017 and 2020, obesity, major depressive disorder, anxiety disorder, panic disorder, and PTSD. *Id.* at 15. The ALJ found, however, that the impairments did not meet or medically equal any listed impairments. *Id.* at 17–21. The ALJ determined that Shirell had the capacity for sedentary work with physical and environmental restrictions. The ALJ found, among other things, that Shirell cannot stand or walk more than four hours per workday; that Shirell can perform only simple, routine, and repetitive tasks; and that Shirell can respond appropriately to only occasional interaction with coworkers, supervisors, and the general public. *Id.* at 21. The ALJ concluded that there were jobs meeting these restrictions that Shirell could perform in the national economy. *Id.* at 25–26. The ALJ thus determined that Shirell was not disabled. *Id.* at 26–27. The Appeals Council denied Shirell's request for review

of the ALJ's decision, and this lawsuit followed.  See 42 U.S.C. § 405(g) (providing for judicial review of final decisions of the Commissioner of the Social Security Administration).

## II.  ANALYSIS

### A.  Standard of Review

The Court's review of the Commissioner's decision is limited to determining whether that decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  "Substantial evidence . . . is more than a mere scintilla."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citation omitted).  This "threshold . . . is not high."  *Id.*  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."  *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (cleaned up).

### B.  Challenge to RFC

Shirell argues that the ALJ erred in failing to account for all of her impairments and related limitations in the RFC.  In particular, Shirell claims that the ALJ failed to fully account for (1) her need for frequent restroom breaks and (2) the time she would be absent from work to attend medical appointments.

At the hearing, Shirell testified that she needed to use the bathroom around 20 to 45 times per day because of diarrhea caused by her pancreatic condition. Admin. Rec. at 47, 60–62. The ALJ found that Shirell's testimony regarding her limitations was not consistent with the medical evidence in the record, identifying multiple conflicts between Shirell's claims and her medical records. *E.g., id.* at 22, 1042 (despite Shirell's claim that she could not sit, stand, or walk for more than 10 minutes at a time, in May 2021 pain specialist Dr. Bradley Bangtson noted that Shirell's pain-clinic goals were "met by ability to work full time and to perform daily activities with some pain"); *id.* at 16, 1079, 1114, 1116, 1122, 1140 (Shirell told mental-health providers in 2021 that she had been diagnosed with stomach cancer and that she had been given only one year to live, but there was no medical evidence of either of these diagnoses); *id.* at 14–15, 405, 1053 (in December 2020, Shirell told Jody Schoenecker, a nurse practitioner, that she had recently been hired for a new job at Nortech in Milaca, and in January 2021 told Dr. Bangtson that she was working on a family farm). Indeed, as the ALJ pointed out, no objective medical evidence substantiated Shirell's claims regarding diarrhea, and Shirell failed to follow her provider's suggested treatment for her diarrhea complaints. *Id.* at 18, 977, 994–95.

The ALJ is not bound to include in the RFC every subjective complaint or subjectively reported limitation. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) ("Subjective complaints may be discounted if there are inconsistencies in the evidence

as a whole."). And where there are significant inconsistencies between subjective complaints and the medical record, the ALJ may properly determine—as the ALJ did here—that a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms are simply not credible. *See Bryant v. Colvin*, 861 F.3d 779, 782–83 (8th Cir. 2017). The ALJ's determination that Shirell's statements regarding the frequency of her need for restroom breaks were not credible is supported by substantial evidence, as is the ALJ's RFC that did not account for frequent restroom breaks.

Shirell next argues that the ALJ erred in not including in the RFC her frequent absences from work for medical appointments. She includes in her memorandum a chart that describes all of her medical appointments from December 2019 to October 2021, including nine medical or mental-health treatment appointments in March 2021, ten in July 2021, eight in August 2021, and five in September 2021. ECF No. 16 at 15–20. But the mere fact that Shirell had numerous appointments does not mean that she would be required to miss all or part of a workday for any particular appointment. Mental-health appointments, for example, are commonly scheduled outside of traditional working hours. *See Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (claimant's "extrapolation of how many days she must have missed from work based on her medical record is faulty [because] . . . it assumes she was required to miss entire days of work for each appointment"). Moreover, the record shows that Shirell attended many of her mental-health appointments—including group-therapy appointments—via

7

telehealth, which does not require the same time away from work as in-person appointments. *E.g.*, Admin. Rec. at 1100, 1104, 1122, 1140.

Although Shirell has established that she attended numerous appointments in the past, the objective medical evidence does not demonstrate that those appointments were related to any actual impairments. *Compare Kim J. H. v. Saul*, No. 18-CV-2736 (MJD/TNL), 2020 WL 872308, at *10 (D. Minn. Jan. 28, 2020) (recommending remanding for reconsideration because the plaintiff came forward with "medical records showing that . . . she had medical appointments *related to her impairments* on more than 50 days" in 33 months) (emphasis added), *adopted*, 2020 WL 869963 (D. Minn. Feb. 21, 2020). For example, many of Shirell's mental-health appointments in 2021 related to her bogus claim that she had been diagnosed with stomach cancer and had only a year to live. *E.g.*, Admin. Rec. at 1122 (session note that Shirell was "very sad this session, crying most of the time" after reporting that she received her biopsy results and "she does have cancer"); *id.* at 1140 (session note that Shirell was "really struggling with fear, and sadness" after her physician said that she has a year left to live). The ALJ did not err in determining that Shirell would be able to attend work on a regular basis for purposes of her RFC.

### C. Vocational Expert Testimony

Shirell contends that the ALJ erred in relying on the vocational expert's testimony without properly ensuring that the testimony was based on the Dictionary of

Occupational Titles ("DOT") and other official sources. Social Security Ruling 00-4p requires the ALJ to conduct an inquiry of the vocational expert to determine whether the expert's opinion conflicts with the DOT, and to resolve any such conflict on the record. *Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions*, SSR 00-4p (S.S.A.), 2000 WL 1898704 (Dec. 4, 2000). The ALJ asked the vocational expert in advance of the expert's testimony to advise the ALJ if any of the expert's opinions conflicted with the DOT, and the vocational expert responded that she would do so. Admin. Rec. at 73–74. After the expert testified, the ALJ again asked her whether any of her opinions conflicted with the DOT. The expert responded that her testimony regarding absenteeism and frequent breaks was not pursuant to the DOT, but was instead based on the expert's "professional experience, education and knowledge." *Id.* at 79. The ALJ determined that the expert's testimony was consistent with the DOT, citing SSR 00-4p. *Id.* at 26.

Shirell contends that the ALJ's questions failed to comply with the ruling's requirements because the ruling ostensibly requires a more thorough inquiry after the testimony is received. But the ruling does not specify the timing of the inquiry; the rule merely requires that, at some point, the ALJ make an inquiry. And the ruling provides that the ALJ may accept a vocational expert's reasonable explanation for any conflict between her opinion and the DOT, including an explanation that the testimony is based

9

on the expert's experience. 2000 WL 1898704, at *2. Indeed, the ruling recognizes that the DOT is not always a definitive source regarding any specific occupation's requirements, both because "[t]he DOT contains information about most, but not all, occupations" and because "'occupation,' as used in the DOT, refers to the collective description of those jobs" so that "[i]nformation about a particular job's requirements" may need to be determined from other sources. *Id.* The ALJ did not run afoul of SSR 00-4p in her reliance on the vocational expert, and remand on this basis is not warranted.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's motion for summary judgment [ECF No. 16] is DENIED.

2. Defendant's motion for summary judgment [ECF No. 18] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 10, 2024                             s/Patrick J. Schiltz
                                                    Patrick J. Schiltz, Chief Judge
                                                    United States District Court